## Holmes v. Dravo Contracting Company et al.

*G. E. Dickerson*, for plaintiff; *Ralph H. Behney*, for defendants.

FINLETTER, P. J., Dec. 22, 1928.—On Feb. 12, 1918, claimant, while at work for the defendant, sustained certain injuries. Shortly afterwards, he and his employer entered into an agreement providing for compensation; under this agreement payments were made for thirteen weeks. Claimant then signed a final receipt. On Dec. 29, 1923, the agreement was, on petition, reinstated. Payments under it were resumed and continued to be made until Sept. 27, 1927, a period of 209 weeks.

On Sept. 27, 1927, 500 weeks had elapsed since the accident.

A petition to terminate compensation was granted by the referee, whose action was affirmed by the board on the theory that the period of liability commenced ten days after the accident and ran thence continuously without regard to the fact that payment had been suspended.

The appellant workman contends that he is entitled to 500 weeks of payment.

The question is one of interpretation of the statute.

Its provisions, section 306 of the Act of June 2, 1915, P. L. 736, 742, are "The following schedule of compensation is hereby established for injuries resulting in total disability: *(a)* For the first 500 weeks, after the fourteenth day of total disability, fifty per centum of the wages."

This was amended by the Act of June 26, 1919, P. L. 642, changing the date of commencement of liability to "the tenth day of total disability." Both acts provide: "Should partial disability be followed by total disability, the period of 500 weeks mentioned in this clause of this section shall be reduced by the number of weeks during which compensation was paid for such partial disability."

The claimant resists the employer's petition to terminate compensation, alleging that he has become, since the reinstatement of his contract, totally disabled. If so, it may be that he is entitled to further compensation, depending on the facts and the interpretation of the statute.

It is conceivable that one may receive a hurt during employment which results in no present disability at all, but which may later produce either partial or total disability. Or a partial disability may immediately follow with no further consequences. Or a total disability may be the immediate consequence. Or an immediate partial disability may later develop into a total one. Or a partial disability may be followed by a period of apparent recovery, or at least of temporary full capacity for work, only to end after an interval in total disability.

These contingencies, no doubt, were in the contemplation of the legislature, for it provides that "should partial disability be followed by total disability,

the period of 500 weeks (of liability to compensation for total disability) shall be reduced by the number of weeks during which compensation was paid for such partial disability."

It is plain, we think, that compensation for total disability commences "on the tenth day of total disability" and continues for 500 weeks from that date. If it was preceded by partial disability, the amendment deducts from this 500 weeks, not the period during which partial disability existed, but the period during which "compensation was paid for such partial disability." "Total disability," or rather ten days thereafter, is fixed as the point of commencement of the running of the time. It is not the "date of the accident" or the date of "partial disability," but the date of "total disability" which the statute provides shall be the point of departure. We need not discuss the reasons for the provision. It is within the power of the legislature. There is no uncertainty about the words. And the time selected, that is, the beginning of total disability, would seem to be the logical time for beginning payment therefor.

The referee has found in his finding dated March 29, 1924, that "The claimant is able to do some form of work which would require him to be on the ground and would not be hazardous to him when he receives one of his epileptic attacks. The referee, therefore, finds that he has a partial disability."

It is plain that as late as the date of this finding the claimant had not suffered total disability. The period of 500 weeks from the "tenth day of total disability" had not yet commenced.

Whether it ever commenced, that is, whether the claimant was ever totally disabled, has not been determined.

Evidently, total disability was not the immediate result of the injuries, for the parties, employer and workman, mutually agreed upon the cessation of compensation thirteen weeks after the accident, and the claimant was able to work, and actually resumed it, and kept at it for several months. But we need not discuss this subject, because the referee has expressly found the disability to be only partial as late as March 29, 1924.

We are of opinion that the case must go back to the Workmen's Compensation Board to permit the determination of the question whether or not there was a total disability, and if so, when did it arise? and that the claimant is entitled to compensation for a period of 500 weeks commencing ten days after such total disability, reduced by the periods of 13 weeks and 209 weeks, during which he received compensation for partial disability.

NOTE.—Syllabus by the Court.